UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD CLEAVE DOUGLAS,

        Plaintiff,                                Case No. 1:07-cv-18

v.                                                   Honorable Janet T. Neff

PATRICIA CARUSO et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Plaintiff is currently incarcerated at the Carson City Correctional Facility (DRF), but the events giving rise to his complaint occurred while he was incarcerated at the St. Louis Correctional Facility (SLF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC) Director Patricia Caruso and the following SLF employees: Warden Blaine Lafler, Food Service Director Scott Smith and Assistant Food Service Director Andy Johnson. In an opinion and order dated May 23, 2007, this Court dismissed Plaintiff's complaint against Defendant Patricia Caruso and Plaintiff's due process claim against Defendant Blaine Lafler (dockets #7, 8) but ordered service on Plaintiff's retaliation and equal protection claims against Defendants Blaine Lafler, Scott Smith and Andy Johnson.

On June 27, 2007, Defendants Lafler, Smith and Johnson filed a motion and supporting brief for summary judgment[1] because Plaintiff failed to exhaust his administrative remedies (dockets #16, 17). Plaintiff filed a response to Defendants Lafler, Smith and Johnson's motion for summary judgment on August 24, 2007 (docket #22). On August 31,2007, Defendants Lafler, Smith and Johnson filed a reply to Plaintiff's August 24, 2007 response (docket #24).

Upon review, I recommend that the motion for summary judgment filed by Defendants Lafler, Smith and Johnson (docket #16) be denied.

### **Applicable Standard for Summary Judgment**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must

---

[1] Defendants titled their motion as a motion for summary judgment. The motion, however, states: "Defendants Blaine Lafler, Scott Smith, and Andy Johnson, by counsel, *move to dismiss* Plaintiff's complaint . . . ." (Defs.' Mot. for Summ. J. at 1, docket #16) (emphasis added.) The supporting brief also refers to the Federal Rule of Civil Procedure 12(b)(6) standard. Because Defendants rely on evidence outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). (*See* Exs. A, B to Defs.' Br. in Supp. of Mot. for Summ. J., docket #17.) Further, all parties "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b). In this case, Plaintiff filed a response to' Defendants' "Motion for Summary Judgment" and Defendants filed a reply to Plaintiff's response. (*See* dockets #22, 24.) As both parties had ample opportunity to present all of their arguments, I find that it is proper for Defendants' motion to be considered as a motion for summary judgment under Federal Rule of Civil Procedure 56.

consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

In his *pro se* complaint, Plaintiff asserts a retaliation and an equal protection claim against Defendants Lafler, Smith and Johnson. Since 2003, SLF employed Plaintiff in food service as a food service clerk. The duties of a food service clerk include typing and sorting mail, but not any heavy lifting. (Ex. 5 to App. C to Compl., docket #1.) On March 7, 2006, Plaintiff received a medical detail for a light duty restriction, which limited his lifting to no more than ten pounds until April 30, 2006. (Ex. 13 to App. D to Compl.) The next day, SLF food service would not allow Plaintiff to return to work until he was released from the light duty restriction. (Attach. to Compl. at 3.)

On March 13, 2006, Plaintiff filed a grievance against several individuals, including Defendants Johnson and Smith, seeking reinstatement to his food service assignment and requesting food service to accommodate his light duty restriction. Two days later, Defendant Johnson recommended in Plaintiff's Work Assignment Evaluation that Plaintiff be terminated from his food service assignment until he could be medically cleared by SLF health services. (Ex. 7 to App. C to Compl.)

On March 23, 2006, Plaintiff alleges that Defendant Johnson submitted a false statement to the grievance coordinator. Defendant Johnson supposedly stated that Plaintiff was occasionally required to "assist with the unloading of the daily deliveries." (Attach. to Compl. at 3.) Plaintiff further alleges that a food service employee altered the work roster to change Plaintiff's assignment from a food service clerk to a commissary worker, whose duties include occasional lifting. On March 31, 2006, Defendant Johnson rehired Plaintiff as a food service clerk. At that time, Plaintiff informed Defendants Smith and Johnson that he would be pursuing his complaint

through the grievance process. On April 3, 2006, the MDOC transferred Plaintiff to the Carson City Correctional Facility. (Attach. to Compl. at 4.)

Plaintiff asserts two constitutional arguments against Defendants. First, Plaintiff argues that Defendants Smith and Johnson violated his rights under the Equal Protection Clause of the Fourteenth Amendment by allowing two other handicapped prisoners, Demetrius McBride (Prisoner No. 192829) and Deji Lee (Prisoner No. 381118), to work in food service with light duty restrictions. He also alleges that Defendant Lafler failed to address the problem in violation of his equal protection rights. Second, Plaintiff asserts a First Amendment retaliation claim against Defendants Lafler, Smith and Johnson. Plaintiff states that he was transferred from SLF to DRF immediately after he informed Defendants Smith and Johnson "that he was going to pursue this claim through each step of the grievance process to obtain back pay for the time he had been laid in from his assignment." (Attach. to Compl. at 5-6.)

On March 13, 2006, Plaintiff filed a Step I grievance against Defendants Smith and Johnson for retaliation and discrimination. Plaintiff named Defendants Smith and Johnson in his Step I grievance and Defendant Lafler in his Step III grievance for Grievance No. SLF-06-03-0468-02G . Plaintiff appealed Grievance No. SLF-06-03-0468-02G through the three-step grievance process.

For relief, Plaintiff requests compensatory and punitive damages. (Attach. to Compl. at 7.)

## Discussion

I.   **Applicable Law**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v.*

*Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added). Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

II.     **Applicable Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2] was the version in effect at all times applicable to this lawsuit. Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated

---

[2]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the December 19, 2003 version of the Policy Directive was in effect at all times applicable to the instant action.

briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Once a grievance is filed, the grievance coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected." *Id.* at ¶ Y. The paragraph continues:

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due . . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or reject[] for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

*Id.* At the interview, a grievant has an opportunity to explain the grievance more completely so that the respondent can gather any additional information necessary to respond to the grievance. *Id.* at ¶ AA.

The Policy Directive provides a number of reasons for which a grievance *must* be rejected and other reasons for which a grievance *may* be rejected.[3] A grievance coordinator must reject grievances (1) jointly filed by two or more prisoners or filed by multiple prisoners as an organized protest, (2) raising certain non-grievable issues, or (3) using profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. *Id.* at ¶¶ F, G. In contrast, a grievance coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner, (2) filed by a prisoner on modified access, (3) filed by a

---

[3]Portions of Policy Directive 03.02.130 use the words "shall be rejected" while other portions use the words "may be rejected." *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ ¶ F, G.

prisoner who did not attempt to resolve the issue with a staff member first, or (4) filed in an untimely manner. *Id.* at ¶ G.

The Policy Directive provides guidelines, including deadlines, for internal appeals of the denial of a grievance at Step II and Step III. *See id.* at ¶¶ R, DD. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations must be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

III.  **Grievance**

Plaintiff filed one grievance concerning the claims raised in his complaint. Plaintiff filed Step I of Grievance No. SLF-06-03-0468-02G on March 13, 2006 against Defendants Smith and Johnson. In Grievance No. SLF-06-03-0468-02G, Plaintiff complains of being unable to work because of his light duty medical detail. (App. A to Compl., docket #1.) The grievance provides that

- 8 -

Defendants Smith and Johnson refused to allow Plaintiff to be in food service with a medical detail for light duty.

> I stated thats [sic] not true[,] you have several prisoners working in food service[] with medical light duty details and you're only doing this to retaliate against me because of the Kosher food that F/s staff have been stealing and eating it [sic], and F/s staff kneeing prisoners and playing the homosexual sick games which both of you know go's [sic] on in food service[] as its been brought to your attention[] many times. Smith spoke up and said you're layed [sic] in until you get the medical detail taken off you. I said I'll file a grievance and Johnson spoke up and said then you'll never work here again and Smith said you can be sure of that.

*Id*.

The MDOC issued a Step I response on April 12, 2006, which stated "Grievant transferred out of the facility before I could interview him. Grievance is considered resolved." (App. B to Compl.) Plaintiff then appealed his grievance to Step II. The Step II response addressed the grievance on the merits as follows:

> The Step I Response indicates that the Grievant was issued a medical lay in by Health Care on 03/08/06. He was informed that when his restrictions were lifted, he could then come back to work in Food Service at the pay scale he was prior to his lay in. It also noted that there were no specific allegations made of wrong doing in the Commissary or Kosher areas of the kitchen. However if something did happen in these areas, he needed to inform the Inspector for proper investigation.
> Investigation reveals that the Step I Response was reviewed and appropriately addresses the issue presented.
>
> Based on the above findings, I consider this grievance resolved.

(Ex. 12 to App. C to Compl.) Plaintiff finally appealed his grievance to Step III. The Step III grievance response states:

> The Grievant presents an issue which alleges that he was wrongfully laid in from his work assignment in Food Service for a medical restriction. He is seeking reinstatement to his assignment along with

- 9 -

>   the necessary back pay as relief.  This issue was processed in accordance with PD-03.02.130, Prisoner/Parolee Grievances.  The action of staff is in accordance with PD-05.02.110, Prisoner Wages, Work Assignment and Stipends.  Therefore, further relief is denied at this level.
>
>   This investigator has reviewed the record presented with the appeal to step three.  The record supports that staff responded to this grievance at step one and step two.  This decision is upheld at this level.  This grievance appeal is denied.

(App. D to Compl.)

In his complaint, Plaintiff alleges retaliation and equal protection claims against Defendants Lafler, Smith and Johnson.  In Defendants Lafler, Smith and Johnson's motion for summary judgment, they argue that Plaintiff failed to exhaust his available administrative remedies because he did not name Defendant Lafler in Step I of Grievance No. SLF-06-03-0468-02G.  Defendants also allege that Plaintiff did not exhaust his retaliation and equal protection claims in accordance with MDOC Policy Directive 03.02.130, ¶ T.  (Defs.' Mot. for Summ. J. at 2, docket #16; Defs.' Reply at 4-6, docket #24.)

In his Response to Defendants' Motion for Summary Judgment, Plaintiff first argues that he appropriately alleged an equal protection claim in his Step I grievance:  "[Defendants Smith and Johnson] both further stated that I could not be in food service with a medical detail for light duty, I stated thats [sic] not true[,] you have several prisoners working in food services with medical light duty details . . . ."  (Pl.'s Resp. at 2, docket #22.)  Citing *Bell v. Konteh,* 450 F.3d 651, 654 (6th Cir. 2006), Plaintiff argues that he only has to provide prison officials with "fair notice" rather than to "allege a specific legal theory" in his grievance.  (*Id.*)  Second, Plaintiff argues that he exhausted his claims against Defendant Lafler because he specifically named him in Step III of Grievance No. SLF-06-03-0468-02G.  Plaintiff alleges that he did not know that Defendant Lafler

was a party to his action until Defendant Lafler denied Plaintiff's grievance at Step II as the Step II Respondent. (*Id.*) Further, Plaintiff argues that if he would have filed a new Step I grievance against Defendant Lafler, the MDOC would have rejected it as duplicative of Grievance No. SLF-06-03-0468-02G. (*Id.* at 3.) Finally, Plaintiff states that he is not required to name all the Defendants at every step of the exhaustion process according to *Jones,* 127 S. Ct. at 922. (*Id.* at 4.) In his Response, Plaintiff did not address Defendants' claim that he failed to exhaust his administrative remedies as to his retaliation claim.

Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants in his Step I grievance. (Defs.' Reply at 5, docket #24.) In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion. This version of the MDOC Policy Directive states the following is required in a grievance:

> A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance and to file a grievance directly with the Prisoner Affairs Section pursuant to Paragraph S; the Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T (emphasis in original). The MDOC did not reject or deny Plaintiff's Grievance No. SLF-06-03-0468-02G in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T, for failure to name the issues or persons being grieved. Defendants raised both objections for the first time in their motion for summary judgment.

Plaintiff asserts that he did not know Defendant Lafler was a party to his action until Defendant Lafler denied Plaintiff's grievance at Step II as the Step II Respondent. Plaintiff also alleges that if he filed another grievance against Defendant Lafler, it would have been rejected as duplicative under MDOC Policy Directive 03.02.130, ¶ G. Plaintiff named Defendant Lafler as a Defendant in Step III of Grievance No. SLF-06-03-0468-02G.

In order to properly exhaust administrative remedies, prisoners must merely comply with the prison grievance procedures available to them. *Jones*, 127 S. Ct. at 922-23. Thus, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Id*. at 923. MDOC Policy Directive 03.02.130, ¶ T, does not require that Plaintiff name all Defendants in a Step I grievance. The Policy Directive requires that the grievant use certain forms to file a Step I, II or III grievance. The Policy Directive also provides that certain information be included in a grievance, i.e. the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how), but does not specifically state that the information must be in a Step I grievance. *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T. The Sixth Circuit previously required a prisoner to specifically mention the involved parties in the Step I grievance. *See Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003). This is no longer the case. The Supreme Court in *Jones*, 127 S. Ct. at 922, abrogated the Sixth Circuit's rule in *Burton,* to require that inmates follow the prison's requirements for exhaustion. Plaintiff named Defendant Lafler in a Step III grievance immediately after he became aware of Defendant Lafler's involvement (as a Step II Respondent) in his claims. As MDOC Policy Directive 03.02.130, ¶ T,

does not specifically require Plaintiff to name Defendant Lafler in a Step I grievance, I find that Defendants failed to satisfy their burden.[4]

Defendants also argue that Plaintiff did not follow MDOC Policy Directive 03.02.130, ¶ T, by sufficiently grieving his equal protection and retaliation claims against Defendants Lafler, Johnson and Smith. Reading Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), Plaintiff appears to allege an equal protection and a retaliation claim in his Step I grievance. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As stated above, Plaintiff's grievance provided that Defendants Smith and Johnson refused to allow Plaintiff to be in food service with a medical detail for light duty when other prisoners were allowed to work in food service with a medical light duty detail. Plaintiff properly argues that he only has to provide prison officials with "fair notice" rather than to "allege a specific legal theory" in his grievance under *Bell*, 450 F.3d at 654. (Pl.'s Resp. at 2, docket #22.) Accordingly, Plaintiff is not required to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or

---

[4]Plaintiff also argues that the Supreme Court's decision in *Jones,* 127 S. Ct. at 922, holds that prisoners are not required to name any defendants in a Step I grievance. Plaintiff's reliance on *Jones,* 127 S. Ct. at 922 is misplaced. The *Jones* Court dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130, there was no requirement that particular officials be named in the administrative grievance. In this case, the version of the policy that became effective on December 19, 2003 governs the grievances filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the issue in a grievance. Plaintiff satisfied the policy by naming all of the Defendants in the three-step grievance process. As I find that Plaintiff satisfied the policy, the Court need not address Plaintiff's duplicative argument

statutory claim made against a defendant in a prisoner's complaint." *Bell,* 450 F.3d at 651. Plaintiff's comment in his Step I grievance that Defendants Johnson and Smith have "several prisoners working in food service[] with medical light duty details" when he was allegedly denied a food service job due to his medical restrictions sufficiently alleges an equal protection claim. (App. A to Compl., docket #1.)  As Plaintiff adequately alleged an equal protection claim in his grievance, Defendants Lafler, Johnson and Smith have not satisfied their burden.

Plaintiff also adequately alleges a retaliation claim in his grievance. In his grievance, Plaintiff states that Defendants Johnson and Smith are "only doing this to retaliate against me because of the Kosher food that F/s staff have been stealing and eating it [sic], and F/s staff kneeing prisoners and playing the homosexual sick games which both of you know go's [sic] on in food service[]. . . ." (App. A to Compl., docket #1.)  When Plaintiff mentioned that he would file a grievance, Defendants Smith and Johnson both told Plaintiff that he would never work in food service again. *Id.*  Defendants argue that Plaintiff's retaliation claim in his complaint is different than the retaliation claim in his grievance. The retaliation claim in Plaintiff's complaint supposedly centered on his transfer to Carson City Correctional Facility rather than the actions of food service staff. (Defs.' Br. in Supp. of Mot. for Summ. J. at 7, docket #17.)  Once again, Plaintiff is not required to "allege a specific legal theory" in his grievance under *Bell,* 450 F.3d at 654. Rather, he only needs to place Defendants on notice of his claims. "[T]he primary purpose of a grievance is to alert prisoners to a problem . . . ." *See Jones,* 127 S. Ct. at 923 (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)). Since Plaintiff specifically stated that Defendants are retaliating against him in his Step I grievance, I find that Plaintiff sufficiently alleged a First Amendment retaliation

claim. Therefore, Defendants Lafler, Johnson and Smith have not satisfied their burden as to Plaintiff's retaliation claim.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the motion for summary judgment filed by Defendants Lafler, Smith and Johnson (docket #16) be denied.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 8, 2008


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).